UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| KAMILLA F. TILLE, | : |
| Plaintiff, | : Civil Action No. 25-14903 (EP) (MAH) |
| v. | : |
| JOHN P. KAPLAN, | : OPINION |
| Defendant. | : |

I.  **INTRODUCTION**

Presently before the Court is the motion by Plaintiff pro se Kamilla F. Tille ("Plaintiff") for the appointment of pro bono counsel pursuant to 28 U.S.C. § 1915(e)(1). Mot. to Appoint Pro Bono Counsel, Sept. 11, 2025, D.E. 9. The Court has received no opposition to the motion. The Undersigned has considered this matter without oral argument. Fed. R. Civ. P. 78; Local Civ. R. 78.1. For the reasons set forth below, Plaintiff's motion is **granted**.

II.  **BACKGROUND**

Plaintiff initiated this action on August 25, 2025, asserting Defendant John Kaplan ("Defendant") distributed intimate images of her without her consent, in violation of the Violence Against Women Reauthorization Act of 2022 ("VAWA"), 15 U.S.C. § 6851. Compl., D.E. 1, at 7-8. The allegations below are gleaned from Plaintiff's Second Amended Complaint. *See* Second Am. Compl., Sept. 10, 2025, D.E. 10. Pertinent to the VAWA claim, Defendant allegedly emailed Plaintiff intimate photographs of her and other women without consent. *Id.* at

2 ¶ 8-10.  Plaintiff asserts Defendant has continually shared these photos with others from 2020 through present.  *Id.* at 3 ¶ 24.[1]

Plaintiff additionally contends Defendant, as a lawyer and municipal prosecutor, violated her constitutional rights under 42 U.S.C. § 1983 by seeking a Final Restraining Order ("FRO") against her in state court, alleging abuse of process, malicious prosecution, retaliation, and deprivation of rights without due process.  *Id.* at 3.  Finally, Plaintiff alleges state law intentional infliction of emotional distress and invasion of privacy claims.  *Id.*  Plaintiff sought a temporary restraining order ("TRO") and preliminary injunction barring Defendant from further distributing these images as well as compensatory and punitive damages and attorney's fees.  *Id.*

In conjunction with filing her Complaint, Plaintiff filed an application to proceed *in forma pauperis* ("IFP") on August 25, 2025.  App. to Proceed IFP, D.E. 1-2.  In a written Memorandum Order, the Honorable Evelyn Padin, United States District Judge, granted that application on August 27, 2025.  Mem. Order, D.E. 4.  In that Order, Judge Padin declined to grant Plaintiff a TRO or other injunctive relief, reasoning that Plaintiff failed to allege an immediate, irreparable harm.  *Id.* at 5-6.  Judge Padin tabled review of Plaintiff's Complaint pursuant to the IFP screening process, 28 U.S.C. § 1915(e)(2)(B), for another time.  *Id.* at 6 n.6.  Judge Padin noted that "Plaintiff would benefit from meaningfully adding to her allegations," because the Complaint, as submitted, provided "the Court . . . little to rely on to find Plaintiff would succeed on the merits of any claim."  *Id.* at 6 n.5.

On September 2, 2025, Plaintiff amended her Complaint.  First Am. Compl., D.E. 7.  The Amended Complaint was nearly identical to her initial Complaint with an added request for

---

[1]  In her initial Complaint, Plaintiff also alleged Defendant "bragged" to Plaintiff that he stored these photos in a Google album, which was shared with his ex-wife.  Compl., D.E. 1, at 12.

damages under the VAWA claim. *Id.* at 2. That same day, Plaintiff requested the U.S. Marshals serve process on Defendant, D.E. 8, however, service cannot be effectuated until after Plaintiff's Complaint is screened pursuant to the IFP screening process, Text Order, Sept. 2, 2025, D.E. 6. Plaintiff filed the instant motion for appointment of pro bono counsel on September 11, 2025. D.E. 9. Plaintiff thereafter amended her Complaint again on September 18, 2025, expanding on the factual background and providing additional exhibits. D.E. 10; D.E. 11.

### III.  DISCUSSION

In civil actions, court appointment of pro bono counsel is neither a constitutional nor statutory right. *Brightwell v. Lehman*, 637 F.3d 187, 192 (3d Cir. 2011); *Parham v. Johnson*, 126 F.3d 454, 456-57 (3d Cir. 1997). Instead, district courts have broad discretion to appoint counsel for those unable to afford it pursuant to 28 U.S.C. § 1915(e). *Montgomery v. Pinchack*, 294 F.3d 492, 498 (3d Cir. 2002) (citing *Tabron v. Grace*, 6 F.3d 147, 157-58 (3d Cir. 1993)). Moreover, "courts should exercise care in appointing counsel because volunteer lawyer time is a precious commodity and should not be wasted on frivolous cases." *Montgomery*, 294 F.3d at 499; *Houser v. Folino*, 927 F.3d 693, 700 (3d Cir. 2019).

As a threshold issue, courts must determine whether a plaintiff's case has "some merit in fact and law." *Montgomery*, 294 F.3d at 499. If it does, the Court then must weigh the following six factors, as enumerated in *Tabron*, to determine whether a pro se plaintiff is eligible to receive pro bono counsel:

> (1) the plaintiff's ability to present his or her own case;
> (2) the difficulty of the particular legal issues;
> (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue investigation;
> (4) the plaintiff's capacity to retain counsel on his or her own behalf;
> (5) the extent to which a case is likely to turn on credibility determinations, and;

        (6) whether the case will require testimony from expert witnesses.

*Id.* (citing *Tabron*, 6 F.3d at 155-57). This non-exhaustive list provides guideposts for the Court's decision, which "must be made on a case-by-case basis." *Tabron*, 6 F.3d at 157-58; *see also Montgomery*, 294 F.3d at 499 (citing *Parham*, 126 F.3d at 457).

    At this very preliminary stage, and without opining as to the ultimate merits of Plaintiff's suit, the Court finds Plaintiff's Second Amended Complaint possesses sufficiently arguable merit in fact and law.[2] After considering the remaining six *Tabron* factors and Plaintiff's motion, the Court concludes that the appointment of pro bono counsel is appropriate.

    The Court begins by considering the first *Tabron* factor: the ability of a plaintiff to present his or her own case. *Montgomery*, 294 F.3d at 501. On this factor, courts generally consider the movant's "education, literacy, prior work experience, prior litigation experience, . . . ability to understand English, and . . . restraints due to confinement." *Woodham v. Sayre Borough Police Dep't*, 191 F. App'x 111, 114 (3d Cir. 2006) (citing *Montgomery*, 294 F.3d at 501). Courts also consider the extent of a plaintiff's "access to necessary resources like a typewriter, photocopier, telephone, and computer." *Parham*, 126 F.3d at 459.

    Plaintiff has made multiple filings in this case. While "a plaintiff's ability to file and respond to motions does not translate to an ability to present his [or her] own case," *Woodham*, 191 F. App'x at 114 (citing *Parham*, 126 F.3d at 459), it appears from Plaintiff's filings that she is literate, understands English, is not presently incarcerated, and has access to materials needed to file motions. These facts would typically weigh against the appointment of counsel.

---

[2] Plaintiff's 42 U.S.C. § 1983 claim requires Defendant to "act on behalf of a state." *Rxeed LLC v. Caremark LLC*, 771 F. Supp. 3d 495, 498 (D.N.J. 2025). Although Defendant was formerly a municipal prosecutor, Plaintiff does not allege "Defendant misused the judicial system" in that role, but instead by privately obtaining a restraining order against her. D.E. 10, at 3. Accordingly, this Opinion focuses on the merits of Plaintiff's VAWA, rather than § 1983, claim.

However, there are clear deficiencies with Plaintiff's filings. For example, despite Judge Padin noting in the August 27, 2025 Memorandum Order that "Plaintiff would benefit from meaningfully adding to her allegations," D.E. 4, at 6 n.5, Plaintiff's First Amended Complaint was nearly identical to her Initial Complaint. Plaintiff also requested the U.S. Marshals serve process on Defendant before her claims were screened pursuant to the IFP screening process. Most crucially, Plaintiff avers she cannot represent herself effectively against Defendant, a former municipal prosecutor and practicing attorney with legal expertise. D.E. 9, at 3. The Court is persuaded by this contention. Because there are facts weighing in favor and against appointment of pro bono counsel on the first factor, the Court finds the first *Tabron* factor is neutral.

The Court next weighs the second *Tabron* factor, the complexity of Plaintiff's case. *Montgomery*, 294 F.3d at 499. Complexity supports appointment "where the law is not clear, [as] it will often serve the ends of justice to have both sides of a difficult legal issue presented by those trained in legal analysis." *Tabron*, 6 F.3d at 156 (quoting *Maclin v. Freake*, 60 F.2d at 889 (7th Cir. 1981)); *accord Montgomery*, 294 F.3d at 502-03. In assessing this factor, courts consider the complexity not only of the ultimate issue of the case but of the proof and discovery that issue entails. *Parham*, 126 F.3d at 459; *see also Montgomery*, 294 F.3d at 502-03 (finding appointment appropriate when, despite simple legal issues, discovery and presentation difficulties compromised the plaintiff's case). Furthermore, this factor should be considered in conjunction with evidence speaking to the plaintiff's capacity to present his own case. *Montgomery*, 294 F.3d at 502 (citing *Tabron*, 6 F.3d at 156).

There is scarce caselaw interpreting the recently enacted VAWA provision at issue, 15 U.S.C. § 6851. Analyzing a new statute will require determining congressional intent, which

primarily entails interpreting a statute's plain language but also, potentially, the statute's purpose and legislative history. *See Nichols v. Knight*, No. 22-5808, 2023 WL 8751265, at *3 (D.N.J. Dec. 18, 2023). Navigating a new statute can be challenging even for an experienced lawyer, let alone a self-represented litigant. Because Plaintiff's VAWA claim presents a novel issue of law, with little binding precedent, the second *Tabron* factor weighs in favor of appointment.

The Court next considers the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue that investigation. *Montgomery*, 294 F.3d at 499. "[W]here claims are likely to require extensive discovery and compliance with discovery rules, appointment of counsel may be warranted." *Id.* (citing *Rayes v. Johnson*, 969 F.2d 700, 703 (8th Cir. 1992)). Here, the Court notes the parties' tumultuous history, including the FRO Defendant sought, and that was eventually entered, against Plaintiff. Regardless of the status of the FRO, the Court finds that Plaintiff's ability to investigate facts is hindered by the parties' contentious history. Thus, the third factor weighs in favor of appointment.

The court now looks to the fourth *Tabron* factor, which concerns a plaintiff's capacity to retain counsel on his or her own behalf. *Montgomery*, 294 F.3d at 499. Plaintiff last filed an IFP application on August 25, 2025. Appl. to Proceed IFP, D.E. 1-2. As explained above, that application was granted on August 27, 2025. Mem. Order, D.E. 4. Plaintiff's indigent status has not materially changed since then. Mot. for Appointment of Pro Bono Counsel, D.E. 12. Plaintiff's indigency weighs in favor of appointing counsel.

In assessing the fifth *Tabron* factor, the Court considers the extent to which Plaintiff's case is likely to depend on credibility determinations. *Montgomery*, 294 F.3d at 499. "[P]ro bono counsel may be warranted when witness credibility is a key issue and when the factfinder must decide between conflicting testimony." *Davis v. Burke*, No. 19-10620, 2022 WL 970220,

6

at *3 (D.N.J. Mar. 30, 2022) (citing *Tabron*, 6 F.3d at 156).  Of course, most cases involve credibility determinations.  *Parham*, 126 F.3d at 460.  Such determinations weigh in favor of appointing counsel if the case would ultimately involve "solely a swearing contest" between witnesses.  *Id.*  Neither Plaintiff's Complaint nor her Motion to Appoint Counsel directly address this factor.  Nonetheless, the Court concludes there is a high likelihood of this case turning into a "swearing contest" between the parties, particularly on the key issue of whether Plaintiff consented to any disclosure of the photos.  Accordingly, the fifth *Tabron* factor weighs in favor of appointment.

In assessing the sixth and final *Tabron* factor, the Court considers whether Plaintiff's case will require testimony from expert witnesses.  *Montgomery*, 294 F.3d at 499.  Plaintiff's submissions, at this early stage of the litigation, do not contemplate reliance on experts, weighing against appointment on this factor.  However, Defendant allegedly used the Internet to disclose the intimate images of Plaintiff at issue.  The Court finds Plaintiff may require an expert in forensic analysis of electronic evidence to opine on the use and contents of Defendant's phone.  Accordingly, the sixth factor is neutral.

On balance, and having considered the *Tabron* factors, the Court finds that the appointment of counsel is warranted.  Appointed counsel will be ordered to file a proposed amended complaint on Plaintiff's behalf so that it can be screened pursuant to 28 U.S.C. 1915(e)(2)(B) and 1915A.

**CONCLUSION**

For the reasons set forth above, Plaintiff's motion for the appointment of pro bono counsel is **granted**.  The Court shall issue an accompanying Order.

*s/ Michael A. Hammer*
**Hon. Michael A. Hammer,**
**United States Magistrate Judge**

**Dated**: September 30, 2025